**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-1296-KMH |
| ) | |
| **$252,300 IN UNITED STATES** ) | |
| **CURRENCY,** ) | |
| ) | |
| **Defendant,** ) | |
| ) | |
| **LEVONZELL NOWDEN,** ) | |
| ) | |
| **Claimant** ) | |
| ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an in rem forfeiture action against $252,300 in U.S. Currency. Levonzell Nowden (claimant) filed the only claim of ownership and an order of default judgment has been entered against all other persons. Clerk's Default Order (Doc. 24). The parties consented under 28 U.S.C. § 636(c)(1) to the jurisdiction of the undersigned magistrate judge and the matter was tried to the court on January 25, 2006. Thereafter, the parties submitted proposed findings of fact and conclusions of law. After consideration, the court's findings of fact and conclusions of law are set forth below.

**Findings of Fact**

1. On March 25, 2004, Nowden was driving a semi-tractor/trailer truck westbound on Interstate 70 in Ellis County, Kansas when he was lawfully stopped by Kansas Highway Patrol Trooper Robert Lytton for a traffic violation. Lee Pierce, Nowden's friend and co-driver, was a passenger in the truck.

2. Trooper Lytton inspected Nowden's log book and, after observing significant discrepancies related to driving hours and travel destinations, requested assistance from Tod Hileman, another trooper in the area. Troopers Lytton and Hileman both noted that Nowden was extremely nervous, pacing up and down near the rear of the truck.

3. John Rule, a Kansas Highway Patrol Trooper specially assigned to criminal interdiction, heard radio traffic concerning the stop and traveled to the scene to provide additional assistance.

4. Nowden voluntarily consented to a search of the truck. Trooper Rule inspected the sleeper area of the truck but was unable to open a compartment under the sleeper bed. When asked about the latch to open the compartment, Nowden told Trooper Rule that because he had never been underneath the sleeper bed he had no explanation for accessing the compartment.

5. Trooper Hileman ultimately located the latch switch and opened the compartment. Inside the compartment were two cardboard boxes. The smaller box was sealed and addressed to "Mabel Smith." This box contained approximately $60,000 in cash in a plastic bag.

6. The larger cardboard box was also sealed and addressed to "Mabel Smith." This box held a black briefcase which was locked. When asked about the briefcase, both Nowden and Pierce claimed that they had never seen the briefcase before and did not know the combination to the lock.

7. The briefcase contained approximately $191,000. The currency was neatly arranged in smaller bundles and sealed in plastic bags consistent with the packaging of drug money.

8. The formal count of the currency found in the two boxes totaled $252,300. When presented with the currency, a certified Kansas Highway Patrol dog alerted to the presence of narcotic odor on the currency. During the unofficial count of the currency, Troopers Hileman and Goheen could smell the odor of marijuana emanating from the currency.

9. Nowden gave inconsistent statements to the troopers concerning the amount of money in the boxes. Nowden first told Trooper Hileman that the boxes contained $140,000, then $160,000 and finally $156,000. In a separate interview, Nowden told Trooper Rule that $71,000 was his and $81,000 belonged to Lee Pierce.

10. When questioned at KHP headquarters on March 25, 2004, Lee Pierce told Trooper Rule that $86,000 of the currency belonged to him and had been given to him by his cousin, NBA star Paul Pierce. After further questioning, Lee admitted that Paul Pierce had not given him the money. Lee later testified by deposition that only $27,000 of the currency was his.

11. Lee Pierce testified that he placed his $27,000 in the black briefcase with Nowden's currency *before* leaving California to travel east. Nowden testified that he placed Pierce's money in the smaller cardboard box and did not tell Pierce about the briefcase until their first night on the road.

12. Interstate 70 is a drug route. Generally illegal drugs that come into the United States start in the southwest border area and travel north or east. However, drug proceeds generally travel west and south. By virtue of geography, California is a drug source state and Massachusetts is a drug destination state.

13. Nowden and Pierce started their trip in California and hauled produce to the East Coast. Although Nowden claims that the produce was delivered to Jersey City, New Jersey, his log book indicates that he traveled to Boston, Massachusetts. Nowden has no explanation for the Boston entry in his log book.

14. Nowden testified that the $253,200 in currency came from: (1) a $200,000 loan from Terry Carter, (2) a $30,000 or $35,000 loan from Lee Pierce, (3) a $10,000 to $25,000 gift from Nowden's mother, and (4) Nowden's personal savings. His testimony is not credible. The currency was purportedly pooled to purchase a truck for the trucking business which Nowden intended to develop; however, Nowden produced no documents showing evidence of: (1) Carter's loan, (2) Pierce's loan, or (2) any agreement or plan to form a trucking operation. Moreover, Nowden's explanation of the "plan" or "agreement" was extremely vague and made no business or economic sense. Equally important, Nowden's testimony is inconsistent with earlier statements to the KHP and also inconsistent with Lee

Pierce's testimony.

15. Terry Carter's deposition testimony that he loaned Nowden $200,000 in currency is also not credible. Carter filed bankruptcy in 1998 and owed $27,000 in back taxes on March 25, 2004. His federal tax returns for 2002, 2003, and 2004 show that Carter was employed as a "home care worker" and made less than $18,000 annually. Contrary to Carter's assertions, the credit card documents and billings which he produced do not support his claim that he accumulated the $200,000 through credit card cash advances.

## Conclusions of Law

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983, governs plaintiff's claim in this case. CAFRA places the initial burden on the government to prove by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1). As part of its case, the government must "establish that there was a substantial connection between the property" and the asserted offense. 18 U.S.C. § 983(c)(3). In this case the government contends that the defendant currency is subject to forfeiture because the currency was furnished or intended to be furnished in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange in violation of 21 U.S.C. § 881(a)(6). For the reasons set forth in greater detail below, the government has satisfied its burden of proof and established a substantial connection between the $253,300 in currency and drug related activity.

### 1. Large Amount of Bundled Cash Stored in Plastic

Nowden and Peirce were transporting approximately a quarter of a million dollars that was divided into bundles and stored in plastic in a manner which is consistent with the packaging of drug money. Further, Nowden's explanation concerning the source and his possession of such a large amount of currency lacks any semblance of credibility. The unexplained possession of such a large amount of currency and the manner of packaging is strong circumstantial evidence that the cash is connected to drug activity. United States v. $84,615 in U.S. Currency, 379 F.3d 496, 501 (8th Cir. 2004).

### 2. Evidence of Concealment

Nowden attempted to conceal the existence of the currency by denying to the troopers that he had been under the sleeper bed or knew how to open the compartment. His attempt to conceal the cash is circumstantial evidence that the currency is substantially connected to illegal conduct.

### 3. Drug Odor

A trained drug dog alerted to the scent of controlled substances on the currency, evidencing a substantial connection between the currency and drug transactions. Most importantly, the odor was strong enough that Troopers Hileman and Goheen smelled the odor of marijuana emanating from the currency.

### 4. Recognized Source Route

Nowden and Pierce traveled from California (a recognized drug source state) to Boston, Massachusetts (a drug destination) and were headed back to California when

discovered with a large amount of currency which, when the plastic bags were opened, gave off an odor of marijuana. When placed in context, the fact that a large amount of currency was discovered on a recognized source route constitutes circumstantial evidence of a substantial connection to a drug offense. See United States v. $159,880 in U.S. Currency, 387 F. Supp. 2d 1000 (S.D. Iowa, 2005).

### 5. Inconsistencies and False Statements

Nowden and Pierce gave inconsistent and/or false statements concerning (1) their travel route and stops, (2) the sleeper compartment, (3) the contents of the two boxes, (4) the amount of currency, and (5) the source of the money. Again, when placed in context with other evidence in this case, their false and/or inconsistent statements are strong circumstantial evidence that the currency is substantially connected to a drug offense.

In summary, the government has proven by a preponderance of the evidence that the currency is subject to forfeiture and established that there is a substantial connection between the $252,300 in U.S. Currency and the asserted offense. Moreover, Nowden's assertions concerning the currency are not supported by any credible evidence. Accordingly, the $252,300 in U.S. Currency is subject to forfeiture under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 983(c).

**IT IS THEREFORE ORDERED** that judgment shall be entered in favor of the United States against the defendant $252,300 in U.S. Currency and against claimant Levonzell Nowden.

**IT IS FURTHER ORDERED** that the government's motion in limine **(Doc. 44)** is

**DENIED as MOOT.** The court found it unnecessary to consider the admissibility of Terry Carter's 1994 conviction for insurance fraud in reaching its decision.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 31st day of March 2006.

                                                                              S/ Karen M. Humphreys
                                                                              _____
                                                                              KAREN M. HUMPHREYS
                                                                             United States Magistrate Judge